

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-21-2000

# United States v Harple

Precedential or Non-Precedential:

Docket 99-1040

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v Harple" (2000). *2000 Decisions.* Paper 12.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/12

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 10, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1040

UNITED STATES OF AMERICA

v.

WILLIAM HARPLE,

Appellant

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(No. 98-cr-00125)
District Judge: The Honorable Raymond J. Broderick

Submitted Under Third Circuit LAR 34.1(a)
July 16, 1999

Before: GREENBERG and ALITO, Circuit Judges, and
STAFFORD, District Judge*

(Opinion Filed: September 10, 1999)

_____

* The Honorable William H. Stafford, Jr., Senior Judge of the United
States District Court for the Northern District of Florida, sitting by
designation.

MICHAEL R. STILES, Esq.
United States Attorney
WALTER S. BATTY, JR., Esq.
Chief of Appeals
HOWARD L. PERZAN
Assistant U.S. Attorney
U.S. Attorney's Office
615 Chestnut Street
Philadelphia, PA 19106

Counsel for Appellee

PAUL M. MESSING, Esq.
Kairys, Rudovsky, Espstein,
 Messing & Rau

924 Cherry Street, 5th Floor
Philadelphia, PA 19107

Counsel for Appellant

OPINION OF THE COURT

ALITO, Circuit Judge:

William Harple appeals from a judgment in a criminal case. A jury convicted Harple of conspiracy to commit arson, in violation of 18 U.S.C. S 371, arson, in violation of 18 U.S.C. S 844(i), and aiding and abetting arson, in violation of 18 U.S.C. S 2. This appeal raises two questions: first, whether the police officers had reasonable suspicion under Terry v. Ohio, 392 U.S. 1 (1968), to effect a stop of the automobile in which Harple was a passenger, and second, whether the officers subsequently had probable cause to arrest Harple and conduct a search of the automobile and its occupants. This latter question requires us to compare the facts of this case to those in United States v. Kithcart, 134 F.3d 529 (3d Cir. 1998), in which we held that probable cause was lacking under somewhat similar circumstances. Here, we hold that the officers based their investigatory stop upon reasonable suspicion and that unlike in Kithcart, the officers then obtained probable cause to arrest the occupants of the automobile, including Harple, and to conduct a search of the automobile and its

2

occupants. Accordingly, we affirm the judgment of the District Court.

I.

On the night of April 9, 1996, Officers McCullough and Postowski of the Philadelphia Police Department were working in the 24th district's burglary detail, an assignment that required them to dress in plainclothes and drive an unmarked car. App. at 15. Their supervisor, Sergeant Neiman, informed them of previous fires in the vicinity of 2500 Butler Street and instructed them to "be on the lookout for a blue over white vehicle with a third brake light with a group of white males inside of it that were last seen leaving that area the night before on a previous fire." App. at 16. Sergeant Neiman also told the officers that the group consisted of five or more young individuals. App. at 17.

At approximately 12:15 a.m., April 10, 1996, Officers McCullough and Postowski received a radio transmission reporting a fire at 2500 Butler Street. App. at 18. Because

their vehicle was only about two or three blocks away from the fire, they arrived at the scene within a minute of receiving the call. App. at 48. Approximately one minute after arriving at the scene, Officers McCullough and Postowski began to survey the area in their unmarked vehicle. App. at 18–19, 48. Within approximately another minute, they discovered a white Oldsmobile with a blue pinstripe and a third brake light. App. at 20–22, 41, 48. The car contained a group of white males. App. at 21. The white Oldsmobile was less than three blocks away from thefire in an area that was not heavily traveled at that time of night. App. at 24, 48, 54. According to Officer McCullough, the driver of the white Oldsmobile was "excessively obeying traffic signal[s]."1 App. at 23. Officer McCullough also

_____

1. Officer McCullough explained: "it has been my experience, on patrol, that people do not tend to stay at the stop sign for more than a short period of time like the driver of that vehicle [i.e., the white Oldsmobile].
They came to a complete stop, stayed there for approximately 15 to 30 seconds and then moved. To me, in my past experience, that is excessive and not normal for everyday drivers[.]" App. at 24.

testified that he could see the fire department trucks at the 2500 Butler Street fire from that location. App. at 55.

Officers McCullough and Postowski called for assistance and continued to follow the Oldsmobile. App. at 25–26. A police wagon soon arrived and pulled over the Oldsmobile. App. at 25. The officers then asked the Oldsmobile's driver for his license and registration. App. at 26. When the driver stated that he did not have these documents, the officers instructed the driver and the other passengers to step out of the vehicle. App. at 26, 28. There were five individuals in the vehicle. App. at 30.

Officer McCullough then used his portable radio to inform other police officers that he had stopped the vehicle. At that point, he heard his radio transmission projected back at him from inside the Oldsmobile. When he stopped transmitting his message, he heard the fire department's radio frequency coming from inside the automobile. App. at 27. Upon looking inside the automobile, Officer McCullough discovered a hand-held scanner that was tuned to the police and the fire departments' radio frequencies. Id. Following the discovery of the hand-held scanner, the officers then proceeded to frisk the occupants and discovered lighters, matches, and rolled-up paper towels. App. at 28. The officers then searched the inside of the Oldsmobile and found a flashlight and a set of walkie-

talkies. App. at 29.

Harple moved to suppress all the physical evidence recovered by the police officers. The District Court denied Harple's motion. The District Court held that "the totality of circumstances support a finding that, at the time Officers Postowski and McCullough stopped the white Oldsmobile carrying Defendant Harple, the officers had a reasonable suspicion that criminal activity was afoot which justified the officers in making a stop under Terry." Dist. Ct. Op. at 8. The District Court also held that "[o]nce[the police officers] discovered the police and fire scanner in the automobile -- after the officers stopped the automobile, but before they effected a search of the automobile or its occupants -- the officers had probable cause to believe that the occupants of the Oldsmobile had committed or were committing arson." Dist. Ct. Op. at 10.

4

On appeal, Harple contends that the District Court erred in making both legal determinations. Harple makes two arguments. First, he claims that "the information possessed by the officers was insufficient to establish reasonable suspicion to warrant an investigative stop." Appellant's Br. at 15. Second, he argues that if the information possessed by the police officer in United States v. Kithcart, 134 F.3d 529 (3d Cir. 1998), was inadequate to support afinding of probable cause to arrest and search the appellant in that case, then it follows that the police officers lacked probable cause here. See Appellant's Br. at 13. We will address each argument in turn.

II.

We review a district court's determinations of reasonable suspicion and probable cause de novo. See Ornelas v. United States, 517 U.S. 690, 697 (1996); United States v. Brown, 159 F.3d 147, 148 (3d Cir. 1998) (reasonable suspicion); United States v. Kithcart, 134 F.3d 529, 531 (3d Cir. 1998) (probable cause). We review a district court's factual findings for clear error. Brown, 159 F.3d at 148.

A.

Terry v. Ohio created a narrow exception to the general warrant requirement of the Fourth Amendment to the United States Constitution. 392 U.S. 1, 20-21 (1968). In Kithcart, we commented that "[a]lthough Terry allows an investigative stop, it still requires reasonable suspicion before the government can justify even this limited intrusion." 134 F.3d at 532. In United States v. Rickus, 737 F.2d 360, 365 (3d Cir. 1984) (quoting Terry, 392 U.S. at

21), we noted that "[r]easonable suspicion must be based upon `specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' "

The District Court supported its holding that the officers had reasonable suspicion to perform an investigatory stop by citing the following factors:

> the temporal and geographic proximity of the Oldsmobile to the Butler Street fire, the fact that the

> Oldsmobile was driving in an otherwise desolate area, the fact that the Oldsmobile substantially matched the description which the officers had received from Sgt. Nieman [sic] (including the automobile having the brake light in the rear window area), the fact that the Oldsmobile started moving in an unusually careful manner, and the fact that, consistent with the briefing the officers had received that night, the Oldsmobile carried several white males who appeared young.

Dist. Ct. Op. at 9-10. We agree with the District Court's analysis, and we accordingly reject Harple's contention that Officers McCullough and Postowski did not have reasonable suspicion to effect an investigatory stop.

B.

We now turn to Harple's second argument, viz., that in view of our opinion in Kithcart, we should hold that Officers McCullough and Postowski did not have probable cause to arrest the Oldsmobile's occupants and to search them and the automobile.2 In Kithcart, a police officer in a patrol car received three radio transmissions within the course of an hour, each of which reported an armed robbery. Id. at 529. The first two robberies occurred in Bensalem Township, the township where the police officer worked. Id. The last robbery occurred in neighboring Bristol Township, and the transmission reporting it did not specify where or when it occurred. Id. at 529-30.

The radio transmissions described the alleged perpetrators of these robberies as "two black males in a black sports car." Id. at 530. Among other things, the transmissions described the vehicle that the alleged perpetrators were driving as a "possible Z-28, possible Camaro." Id. (footnote omitted). Approximately ten minutes after receiving the final transmission, a police officer spotted a black Nissan 300ZX approximately a mile from the boundary of Bristol Township. Id. The police officer

discerned that an African-American male was driving the

_____

2. The government has not attempted to justify the frisk of the occupants under Terry.

6

automobile, and she believed that he was the only person in the car. Id. The police officer then observed the Nissan drive through a red light. Id. At that point, she turned on her dome lights, and the Nissan pulled over. Id. The police officer then called for backup. Id. After two backup police officers arrived, the officers conducted a search and discovered a gun in Kithcart's white nylon waist pouch and another gun under the driver's seat. Id.

The District Court held "that the officers had `probable cause' to arrest Kithcart and to search him incident to the arrest." Id. at 531. We reversed the District Court, noting that "[t]he mere fact that Kithcart is black and the perpetrators had been described as two black males is plainly insufficient" to support a finding of probable cause. Id. In addition, we stated that "[a]lthough the Camaro Z-28 and the Nissan 300ZX could be considered `sports cars,' there was no evidence offered at the suppression hearing that the shapes of the two cars were sufficiently similar so as to warrant an inference that a 300ZX could be mistaken for a Z-28." Id. Lastly, we noted that "[t]here was no evidence presented as to where in Bristol Township the final robbery occurred; nor was there evidence presented that the Bristol robbery occurred shortly before Officer Nelson stopped the car carrying Kithcart." Id.

We reject Harple's contention that Kithcart requires us to reverse the District Court's determination that Officers McCullough and Postowski had probable cause to arrest the Oldsmobile's occupants and to search them and the automobile. Unlike in Kithcart -- where the officer essentially relied upon a description of the perpetrators as two black males driving a black sports car -- the officers here did not rely solely upon Sergeant Neiman's description of the alleged arsonists as a young group of white males driving a blue on white automobile. Rather, there was other evidence linking Harple to the arson at 2500 Butler Street. In contrast to Kithcart, the record here shows that the officers had knowledge of where the arson happened and that the officers stopped the car carrying Harple shortly after the arson occurred. Moreover, the officers spotted the white Oldsmobile moving in an abnormally cautious manner less than three blocks away from the fire. From

7

that location, the occupants of the Oldsmobile could see the fire trucks that had arrived at the scene of thefire. After the stop, the officers discovered hand-held scanners tuned to police and fire department frequencies, behavior that tended to show that the occupants of the Oldsmobile were monitoring police and fire department activity. In light of this evidence, we hold that the District Court did not err in concluding that the officers had probable cause to arrest the occupants of the Oldsmobile, including Harple, and to search the automobile.

III.

For these reasons, we affirm the judgment of the District Court.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit